UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street – 18th Floor
New York, NY 10004,

AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, DC 20045,

           Plaintiffs,

  v.

FEDERAL BUREAU OF PRISONS
320 First Street, NW
Washington, DC 20535,

           Defendant.

No. 1:24-cv-_____

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**
(Freedom of Information Act)

1. Plaintiffs American Civil Liberties Union, American Civil Liberties Union Foundation, and American Civil Liberties Union of the District of Columbia (together, the "ACLU"), bring this action against the Federal Bureau of Prisons ("BOP") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA to immediately release improperly withheld agency records about the

placement of people in home confinement in accordance with the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and the administration of these placements.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has personal jurisdiction over the parties. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff American Civil Liberties Union is a nationwide non-profit organization with approximately two million members and supporters dedicated to protecting the civil liberties and civil rights of all Americans, including the rights of people who are incarcerated. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and civil rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

4. Plaintiff American Civil Liberties Union Foundation is an affiliated non-profit organization that shares the goals of the American Civil Liberties Union and engages in litigation and public education to support those goals.

5. Plaintiff American Civil Liberties Union of the District of Columbia is the Washington, DC, affiliate of the American Civil Liberties Union.

6. Defendant Federal Bureau of Prisons is an agency of the United States Government within the meaning of the Freedom of Information Act. It has possession, custody, and control of the records that Plaintiffs seek in this action.

## FACTS

### Background

7. Prior to the COVID-19 pandemic, under 18 U.S.C. §3624(c)(2), BOP had authority to place incarcerated people in home confinement "for the shorter of [the last] 10 percent of the term of imprisonment of that prisoner or 6 months." In March 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded BOP's authority to place people on home confinement for longer periods of time so that BOP could reduce the federal prison population and the spread of COVID-19:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Sec. 12003(b)(2), 134 Stat. 516, 18 U.S.C. § 3621 notes. "[T]he term 'covered emergency period' means the period beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act, Sec. 12003(a)(2).

8. On March 26, 2020, Attorney General William Barr ordered BOP to transfer certain incarcerated people to home confinement to decrease health risks, recognizing home

confinement as "[o]ne of BOP's tools to manage the prison population and keep inmates safe."[1] Barr described home confinement decisions as "granting an[] inmate discretionary release"[2] and explained that incarcerated people who meet certain criteria are considered "appropriate candidates for home confinement rather than continued detention" at BOP prisons.[3] BOP began placing people categorized as non-violent on home confinement, mainly those who were elderly or otherwise especially vulnerable to COVID-19.[4] In June 2020, the BOP Director and Medical Director testified in the Senate that people being moved to home confinement under the CARES Act would be on home confinement "for service of the remainder of their sentences."[5]

9. Despite BOP's representations that people released to home confinement pursuant to the CARES Act would stay at home for the remainder of their sentences, the Department of Justice ("DOJ") Office of Legal Counsel ("OLC") issued a Memorandum Opinion in the last days of the Trump Administration concluding that, once the President lifts the emergency

---

[1] The Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), available at https://www.justice.gov/file/1262731/download.

[2] *Id*. at 2.

[3] The Attorney General, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 at 2 (Apr. 3, 2020), available at https://www.justice.gov/file/1266661/download.

[4] *See* Federal Bureau of Prisons, Memorandum for Chief Executive Officers re: Home Confinement (April 13, 2021), available at https://www.fd.org/sites/default/files/covid19/2021.4.13_-_bop_home_confinement_cares_memo.pdf (stating that to be eligible for home confinement under the CARES Act, BOP must verify that a person's "current or a prior offense is not violent, a sex offense, or terrorism-related.").

[5] Dep't of Justice, Statement of Michael D. Carvajal, Director, and Dr. Jeffrey Allen, Medical Director, Federal Bureau of Prisons, Before the U.S. Senate Committee on the Judiciary (Carvajal and Allen Statement) at 6 (June 2, 2020), available at https://www.judiciary.senate.gov/imo/media/doc/Carvajal-Allen%20Joint%20Testimony.pdf.

declaration, BOP *must* reincarcerate people who were moved to home confinement under the CARES Act and have more than the standard home confinement term left on their sentences.[6]

10. When it was reported that OLC—under President Biden—would not rescind or reconsider its decision,[7] significant public outcry ensued.[8] On September 2021, President Biden directed his administration to collect the information needed to consider granting clemency to a subset of the people who would be subject to reincarceration based on OLC's memorandum.[9]

11. On December 21, 2021, OLC published a new memorandum on the same issue, this time concluding that BOP is not required to reincarcerate everyone who was put on home confinement under CARES and has more than the standard home confinement term left on their sentences when the national emergency ends.[10]

---

[6] Dep't of Justice, Home Confinement of Federal Prisoners After the COVID-19 Emergency (January 15, 2021), available at https://www.justice.gov/olc/file/1355886/download.

[7] *See* Charlie Savage and Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, N.Y. Times (July 19, 2021), available at https://www.nytimes.com/2021/07/19/us/politics/biden-prisoners-covid.html.

[8] *See e.g.,* Editorial Board, *Unless Biden intervenes, people will needlessly be sent back to prison*, Washington Post (July 25, 2021), available at https://www.washingtonpost.com/opinions/2021/07/25/unless-mr-biden-intervenes-people-will-needlessly-be-sent-back-prison/; Dan King, *Biden Must Act to Ensure Nonviolent Offenders Aren't Sent Back to Prison*, The Bulwark (August 19, 2021), available at https://www.thebulwark.com/biden-must-act-to-ensure-nonviolent-offenders-arent-sent-back-to-prison/; Democracy Forward et al., *Letter to the Office of Legal Counsel and Deputy Attorney General*, (August 4, 2021), available at https://democracyforward.org/wp-content/uploads/2021/08/Letter-Seeking-Reconsideration-of-OLC-Home-Confinement-Memo-8.4.21.pdf; Kristine Phillips, *ACLU, NAACP among those pressing Biden to grant clemency to inmates sent home during COVID-19*, USA Today (July 19, 2021), available at https://www.usatoday.com/story/news/politics/2021/07/19/biden-pressed-grant-clemencyinmates-sent-home-during-covid/7980882002/.

[9] Sam Stein, *Biden starts clemency process for inmates released due to Covid conditions,* Politico (September 13, 2021), available at https://www.politico.com/news/2021/09/13/biden-clemency-covid-inmates-511658.

[10] Dep't of Justice, Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency (December 21, 2021), available at https://www.justice.gov/olc/file/1457926/download.

12. President Biden ended the COVID-19 national emergency declaration on May 11, 2023.[11] Thirty days after that, BOP lost its authorization to make new CARES Act home confinement placements. And according to the 2021 OLC memorandum, BOP has discretion to reincarcerate people who, as of June 10, 2023, had more than six months remaining on their sentence.

13. On April 4, 2023, DOJ published a final rule that purports to indicate how BOP will exercise its discretion to reincarcerate people who have more than six months remaining on their sentence as of June 10, 2023. 88 FR 19830.[12] In fact, this rule provides very little information about how BOP will exercise its discretion. The rule indicates that more information is forthcoming: "After publication of this final rule, the Department and the Bureau will work together to develop guidance to explain objective criteria the Bureau will use to make individualized determinations as to whether any inmate placed in home confinement under the CARES Act should be returned to secure custody." 88 FR at 19832.

14. Thousands of people are currently on home confinement.[13] As of last year, thousands were on home confinement specifically pursuant to the CARES Act.[14] It is unknown how many

---

[11] The White House, Notice on the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic (Feb. 10, 2023), available at https://www.whitehouse.gov/briefing-room/presidential-actions/2023/02/10/notice-on-the-continuation-of-the-national-emergency-concerning-the-coronavirus-disease-2019-covid-19-pandemic-3/.

[12] Office of the Attorney General, Home Confinement Under the Coronavirus Aid, Relief, and Economic Security Act, 88 Fed. Reg. 19830 (Apr. 4, 2023), available at https://www.federalregister.gov/documents/2023/04/04/2023-07063/office-of-the-attorney-general-home-confinement-under-the-coronavirus-aid-relief-and-economic.

[13] According to the BOP website, there are 5,115 people on home confinement as of February 8, 2024. Federal Bureau of Prisons, available at https://www.bop.gov/mobile/about/population_statistics.jsp (last visited February 14, 2024).

[14] 88 Fed. Reg. 19831 (Apr. 4, 2023) ("as of January 23, 2023…3,434" people "were placed in home confinement pursuant to the CARES Act.").

of these people have more than six months remaining on their sentence as of June 10, 2023, and therefore unknown how many are at risk of reincarceration.

15. According to DOJ, most people placed in home confinement pursuant to the CARES Act are successfully reintegrating into society: "Violations of the conditions of home confinement requiring return have been rare during the pandemic emergency, however, and very few inmates placed in home confinement under the CARES Act have committed new crimes." 87 FR at 36788.[15]

16. Despite the success of the program, some lawmakers recently attempted to pass a Senate resolution intended to force thousands of people back to prison.[16]

17. BOP has revoked the home confinement placement of some individuals. Media reports, legal filings, and court orders indicate that BOP is not providing fair process before revoking home confinement and that the justifications for revocations are unjust.[17]

**Plaintiffs' FOIA Request and Defendant's Responses**

18. Seeking to learn more about the people who face the possibility of reincarceration, the people who have already been reincarcerated, and seeking to assess the effectiveness and

---

[15] Available at https://www.federalregister.gov/documents/2022/06/21/2022-13217/home-confinement-under-the-coronavirus-aid-relief-and-economic-security-cares-act.

[16] C.J. Ciaramella, *Senate Resolution Would Send Federal Offenders Back to Prison 3 Years After Being Released to Home Confinement*, Reason (Nov. 6, 2023), available at https://reason.com/2023/11/06/senate-resolution-would-send-federal-offenders-back-to-prison-3-years-after-being-released-to-home-confinement/.

[17] *E.g.,* Kristine Phillips, *Woman who was arrested after missing officials' phone call while in computer class is headed home*, USA Today (July 6, 2021), available at https://www.usatoday.com/story/news/politics/2021/07/06/gwen-levi-headed-home-after-judge-approves-compassionate-release/7877359002/; Petition for Writ of Habeas Corpus at 4, *Daniels v. Martinez*, No. 22-cv-918 (E.D.N.Y. filed Feb. 18, 2022), ECF No. 1 (BOP imprisoned Quinteria Daniels—a mother to three young children—for possessing a sealed bottle of alcohol that her boss gave her as a birthday present); *Tompkins v. Pullen*, No. 22-cv-339, 2022 WL 3212368 (D. Conn. Aug. 9, 2022) (BOP revoked Nordia Tompkins' home confinement placement for stopping at an AT&T store before going home).

administration of the CARES Act home confinement program since it has ended, the ACLU submitted a FOIA request to BOP on January 8, 2024. (Attached as Exhibit A). The ACLU seeks the release of records providing information about people moved to home confinement under the authority of the CARES Act, including their sentences, the dates of their transfers to home confinement, and their projected release dates. The ACLU also seeks the release of records providing information about people whose CARES Act home confinement placement was revoked, including the reason(s) for revocation. The request made clear that it did not seek names, register numbers, or any other personal identifying information.

19. The ACLU's FOIA request sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The request seeks information that will help the public understand how many people are in jeopardy of reincarceration and the circumstances of these peoples' criminal cases. The request also seeks information that will help the public assess the success and administration of the CARES Act home confinement program. Complete information on these issues is not currently available to the public. The ACLU did not file these requests to further its commercial interest. As described above, the ACLU is a non-commercial organization, and the ACLU will make significant information it obtains from these requests available to the public at no cost.

20. BOP acknowledged receipt of Plaintiffs' request on January 9, 2024, and assigned it FOIA #2024-01462. In its response, BOP designated the matter as complex, thereby extending the time limit to respond to the request for the 10 additional days provided by statute.

21. BOP's statutory time to respond to the request has expired.

22. No records have been produced in response to this request.

## CLAIM FOR RELIEF

### Violation of FOIA, 5 U.S.C. § 552

23. FOIA requires agencies of the federal government to "promptly" release records to the public upon request, unless a specific statutory exemption applies or disclosure is prohibited by law. 5 U.S.C. § 552(a)(3)(A). An agency must determine, within 20 working days after receipt of a request for records, whether to comply with the request and must immediately notify the requester of its determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). In unusual circumstances, the agency has an additional 10 days to comply with the request. 5 U.S.C. § 552(a)(4)(A)(viii)(II)(aa). A requester is deemed to have exhausted its administrative remedies if the agency fails to comply with FOIA's applicable time limit provisions. 5 U.S.C. § 552(a)(6)(C)(i).

24. Defendant is an agency within the meaning of FOIA, 5 U.S.C. § 552(f) and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

25. Plaintiffs properly requested records within the possession, custody, and control of Defendant.

26. Defendant is wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce records responsive to the ACLU's FOIA request within the time specified by FOIA.

27. Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to their FOIA request and to justify the withholding of any responsive records withheld under claim of exemption.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

A. Declare unlawful the Defendant's failure to comply with FOIA;

B. Declare that Plaintiffs are entitled to disclosure of the requested records;

C. Order Defendant to immediately process Plaintiffs' request and disclose, in their entirety, unredacted versions of all records responsive to Plaintiffs' request except for any portions that are specifically exempt from disclosure under FOIA;

D. Enjoin Defendant from charging Plaintiffs search, review or duplication fees for the processing of the request;

E. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' request;

F. Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

G. Grant such other and further relief as the Court may deem just and proper.

March 11, 2024

Respectfully submitted,

*Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
 of the District of Columbia
529 14th Street, NW, Suite 722
Washington, DC 20045
(202) 601-4266
aspitzer@acludc.org

Emma A. Andersson[*] (CA Bar No. 260637)
American Civil Liberties Union Foundation
125 Broad Street – 18th floor
New York, NY 10004
(347) 931-6337
eandersson@aclu.org

Attorneys for Plaintiffs

---

[*] Motion for admission *pro hac vice* forthcoming.

10