January 8, 2024

FOIA/PA Section
Office of General Counsel, Room 924
Federal Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534
Email: BOP-OGC-EFOIA-S@BOP.GOV

Re: **Request Under Freedom of Information Act Concerning People BOP Moved to Home Confinement Under the Authority of the CARES Act**

**Fee Waiver Requested**

To Whom It May Concern:

The American Civil Liberties Union, the American Civil Liberties Union Foundation, and the American Civil Liberties Union of the District of Columbia (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to the people in Bureau of Prisons ("BOP") custody who BOP moved to home confinement under the authority of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

## I. Background

In March 2020, the CARES Act expanded BOP's authority to place incarcerated people on home confinement under 18 U.S.C. § 3624(c)(2) in order to reduce the federal prison population and the spread of COVID-19. CARES Act Sec. 12003(b)(2). In January 2021, the Office of Legal Counsel ("OLC") published a memorandum concluding that once the COVID-19 emergency period ends, BOP must reincarcerate people who were put on home confinement under CARES and have more than the standard home confinement term left on their

ACLU
AMERICAN CIVIL LIBERTIES UNION

National Office
125 Broad Street
18th Floor
New York, NY 10004
aclu.org

**Deborah N. Archer**
President

**Anthony D. Romero**
Executive Director

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

sentences.[2] When it was reported that OLC—under President Biden—would not rescind or reconsider its decision,[3] significant public outcry ensued.[4] In September 2021, President Biden directed his administration to collect the information needed to consider granting clemency to a subset of the people who would be subject to reincarceration based on OLC's memorandum.[5] No such clemency grants occurred. However, on December 21, 2021, OLC published a new memorandum on the same issue, this time concluding that BOP is not required to reincarcerate everyone who was put on home confinement under the CARES Act and has more than the standard home confinement term left on their sentences when the national emergency ends.[6]

President Biden ended the COVID-19 national emergency declarations on May 11, 2023.[7] Thirty days after that, BOP lost its authorization to make new CARES Act home confinement placements. And according to the December 2021 OLC memorandum, BOP has discretion to reincarcerate people who, as of June 10, 2023, had more than six months remaining on their sentence.

On June 21, 2022, the Department of Justice ("DOJ") published a proposed rule about how that discretion would be implemented,[8] and it issued its final rule on April 4, 2023.[9] Both the proposed and final rules indicate that the

---

[2] U.S. Department of Justice, *Home Confinement of Federal Prisoners After the COVID-19 Emergency* (January 15, 2021), available at https://www.justice.gov/olc/file/1355886/download.
[3] *See* Charlie Savage and Zolan Kanno-Youngs, *Biden Legal Team Decides Inmates Must Return to Prison After Covid Emergency*, N.Y. Times (July 19, 2021), available at https://www.nytimes.com/2021/07/19/us/politics/biden-prisoners-covid.html.
[4] *See e.g., Unless Biden intervenes, people will needlessly be sent back to prison*, Editorial Board, Washington Post (July 25, 2021) available at https://www.washingtonpost.com/opinions/2021/07/25/unless-mr-biden-intervenes-people-will-needlessly-be-sent-back-prison/; Dan King, *Biden Must Act to Ensure Nonviolent Offenders Aren't Sent Back to Prison*, The Bulwark (August 19, 2021), available at https://www.thebulwark.com/biden-must-act-to-ensure-nonviolent-offenders-arent-sent-back-to-prison/; Kristine Phillips, *ACLU, NAACP among those pressing Biden to grant clemency to inmates sent home during COVID-19*, USA Today (July 19, 2021), available at https://www.usatoday.com/story/news/politics/2021/07/19/biden-pressed-grant-clemencyinmates-sent-home-during-covid/7980882002/.
[5] Sam Stein, *Biden starts clemency process for inmates released due to Covid conditions*, Politico (September 13, 2021) available at https://www.politico.com/news/2021/09/13/bidenclemency-covid-inmates-511658.
[6] U.S. Department of Justice, *Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency* (December 21, 2021), available at https://www.justice.gov/olc/file/1457926/download.
[7] *See* Walter Pavlo, *Federal Bureau Of Prisons Set To End Home Confinement Under CARES Act*, Forbes (January 31, 2023), available at https://www.forbes.com/sites/walterpavlo/2023/01/31/federal-bureau-of-prisons-set-to-end-home-confinement-under-cares-act/?sh=6bad8e4138af
[8] Home Confinement Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 87 Fed. Reg. 36,787 (June 21, 2022) available at https://www.federalregister.gov/documents/2022/06/21/2022-13217/home-confinement-underthe-coronavirus-aid-relief-and-economic-security-cares-act.
[9] Home Confinement Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 88 Fed. Reg. 19,830 (April 4, 2023) available at

program has been very successful. The proposed rule states: "The percentage of inmates placed in home confinement under the CARES Act that have had to be returned to secure custody for any violation of the rules of home confinement is very low; the number of inmates who were returned as a result of new criminal activity is a fraction of that."[10] Similarly, the final rule states that a "low percentage of inmates placed in CARES Act home confinement [have been] returned to secure custody."[11]

The ACLU seeks information through this FOIA Request so that the American public can know more about the people who were moved to home confinement during the entire period of the expanded CARES Act authorization; about the people who now face the possibility of reincarceration at the BOP's discretion under the final rule; about the people who allegedly violated the terms of their home confinement; and about whether the program has been successful or not.

## II. Requested Records

The ACLU seeks records sufficient to show:

1) For each individual BOP moved to home confinement under the authority of the CARES Act at any time, the following information:

   (a) Top crime of conviction (including United States Code section and subsection)
   (b) Sentence in months
   (c) Obligation commitment date
   (d) Jail credit in days
   (e) Court of Jurisdiction
   (f) Home Confinement Eligibility Date absent CARES authorization
   (g) Facility of BOP transfer
   (h) Date of admission to home confinement
   (i) Projected release date
   (j) Actual release date
   (k) Race
   (l) Ethnicity
   (m) Gender
   (n) Age at the time the inmate entered home confinement

2) For each individual BOP moved to home confinement under the authority of the CARES Act at any time, and who were later alleged to have violated the terms of their home confinement:

---

https://www.federalregister.gov/documents/2023/04/04/2023-07063/office-of-the-attorney-general-home-confinement-under-the-coronavirus-aid-relief-and-economic.
[10] 87 Fed. Reg. at 36,795.
[11] 88 Fed. Reg. at 19,838.

(a) Alleged violation
(b) Date of the alleged violation
(c) Date of Center Discipline Committee (or equivalent) hearing
(d) Date of Discipline Hearing Officer (or equivalent) hearing
(e) Outcome of process (specifying at minimum, exonerated of alleged violation, or alleged violation sustained)
(f) Punishment in cases where alleged violation was sustained (specifying at minimum whether home confinement was revoked or not)
(g) If applicable, date of return to Residential Reentry Center/halfway house
(h) If applicable, date of return to secure custody
(i) Top crime of conviction (including United States Code section and subsection)
(j) Date of admission to home confinement
(k) Projected release date
(l) Actual release Date
(m) Race
(n) Ethnicity
(o) Gender
(p) Age at the time the inmate entered home confinement

The ACLU does *not* seek names, register numbers, or any other personal identifying information.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in an Excel spreadsheet. As noted above, we seek only records sufficient to provide the specified information; we do not seek the release of all records containing the specified information.

### III. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[12] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

   A.  *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

---

[12] *See also* 28 C.F.R. § 16.10(k)(2).

As discussed above, this Request concerns the people BOP moved to home confinement during a time-limited program. It seeks information that will reveal how many of those people are at risk of being returned to prison based on the discretion formalized in the agency's final rule published last year. It also seeks information regarding the people who allegedly violated the terms of their home confinement placement and how BOP handled those allegations. The information sought does not otherwise exist in the public domain and is necessary for the public to meaningfully evaluate the successes and failures of this program.

The ACLU is not filing this Request to further its commercial interest. As described above, the ACLU is a noncommercial organization, and information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

### B. *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that it qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[13] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[14]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience").

---

[13] *See also* 28 C.F.R. § 16.10(k)(2)(ii)–(iii).
[14] *See also* 28 C.F.R. § 16.10(b)(6).

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10-15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[15]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[16] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

\* \* \*

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

---

[15] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[16] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.

   Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Emma Andersson
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 347.931.6337
eandersson@aclu.org

Sincerely,

   <u>/s/ Emma Andersson</u>
   Emma Andersson*
   American Civil Liberties Union Foundation
   125 Broad Street, 18th Floor
   New York, New York 10004
   347.931.6337
   eandersson@aclu.org

   *Admitted in California*